IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTOPHER SHEBBY :
 :
 :
 v. : Civil Action No. DKC 17-2847
 :
STIFEL, NICOLAUS & COMPANY, INC.
 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this contract case are a motion to dismiss or, in the alternative, to stay proceedings and compel arbitration filed by Defendant Stifel, Nicolaus & Company, Inc. ("Defendant"), (ECF No. 14), and a request for a hearing filed by Plaintiff Christopher Shebby ("Plaintiff), (ECF No. 25). For the following reasons, the motion to dismiss will be granted, and the request for a hearing will be denied. Local Rule 105.6.

**I. Background[1]**

On May 14, 2008, Plaintiff started working for Defendant as the Co-Head and Managing Director of Defendant's Energy and Natural Resources Group (the "Energy Division"). Prior to Plaintiff beginning his employment, Plaintiff and Defendant signed a letter agreement ("Offer Letter"). The Offer Letter

---

[1] Unless otherwise noted, the facts outlined here are undisputed and construed in the light most favorable to Plaintiff.

was "governed by and construed in accordance with the laws of the State of Missouri . . . . Any dispute or disagreement arising out of [the Offer Letter] or a claimed breach . . . [had to] be finally resolved by binding arbitration in St. Louis, Missouri [.]" (ECF No. 2-1 ¶ O).

The Offer Letter also outlined Plaintiff's compensation. Plaintiff received a base salary, and Defendant paid most of Plaintiff's compensation in bonuses. The bonuses were "subject to the Stifel Nicolaus Wealth Accumulation Plan ('SWAP')." (ECF No. 2-1 ¶ E). SWAP allowed key employees to gain an equity interest in Defendant by earning stock options which would vest at regular intervals. Under SWAP, if an employee was terminated due to "a restructuring of the business," any deferred options immediately vested. (ECF No. 2-2, at Art. 5.2(c)). In addition, SWAP contained a forum selection provision:

> Any claim or action filed in court or any other tribunal in connection with the Plan by or on behalf of a Participant or Beneficiary shall be brought or filed only in the United States District Court for the Eastern District of Missouri, or if that Court does not or would not have subject matter jurisdiction over the claim asserted, then such claim or action shall be filed only in the Circuit Court of St. Louis County, Missouri.

(*Id.* at 10.11).[2] SWAP contained a merger clause stating, "This document and any amendment contain all the terms and provisions of the Plan and shall constitute the entire Plan, any other alleged terms or provision being of no effect." (*Id.* at 10.8).

As part of his employment, Plaintiff was required to be licensed and registered with the National Association of Securities Dealers, Inc. ("NASD"). To be licensed and registered with NASD, a person must sign an "SEC-Approved Uniform Application Securities Industry Registration or Transfer form" (Form U-4). On June 17, 2008, Plaintiff executed the Form U-4. (ECF No. 14-1, at 3). The Form U-4 stated:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my *firm*, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs Indicated in Section (SRO REGISTRATION) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction*.

(ECF No. 14-3, at 12) (emphasis in the original).

From 2008 until February 2016, Plaintiff worked in Defendant's Bethesda office. In 2015, the energy industry suffered a downturn, and, in response, Defendant downsized its Energy Division and centralized its Energy Division's operations

---

[2] The United States District Court for the Eastern District of Missouri and the Circuit Court of St. Louis County will be referred to collectively as St. Louis courts or a St. Louis court.

in Houston, Texas. On February 24, 2016, Defendant fired Plaintiff. (ECF No. 2 ¶¶ 25-31).

On August 15, 2017, Plaintiff brought suit in the Circuit Court for Montgomery County, Maryland. He brought claims for a violation of the Maryland Wage Payment & Collection Law (MWPCL), breach of contract, breach of fiduciary duty, and unjust enrichment. He alleged that Defendant had violated the terms of SWAP and withheld money owed to him under the plan. On September 25, Defendant removed the case. (ECF No. 1). On October 2, Defendant moved to dismiss arguing that Plaintiff had agreed to arbitrate the dispute in both his offer letter and the Form U-4. (ECF No. 14). The case was stayed pending mediation. The mediation efforts were unsuccessful, and the stay was lifted. On December 21, 2017, Plaintiff responded to the motion to dismiss (ECF No. 22), and Defendant replied (ECF No. 23). On January 10, 2018, Plaintiff requested a hearing regarding the motion to dismiss (ECF No. 24), and Defendant responded (ECF No. 25).

**II. Standard of Review**

The "first principle" of arbitration is that "[a]rbitration is strictly a matter of consent[.]" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks omitted). Thus, before a court can order arbitration, the court must be assured that "the parties have agreed to submit to

arbitration." *Id.* (internal quotation marks omitted). "Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002).

In deciding a motion to compel arbitration where the parties dispute the existence of an arbitration agreement, courts apply the summary judgment standard. *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016). Therefore, the motion will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).

**III. Employment Documents**

    **A.    Applicable State Law**

A district court applies the substantive law and choice of law rules of the state in which the court sits. *Padco Advisors, Inc. v. Omdahl*, 179 F.Supp.2d 600, 605 (D.Md. 2002) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). Where a contract has a choice of law provision, Maryland generally applies the law of the specified jurisdiction. *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 617 (2007). One exception to the general rule is that Maryland courts will not apply another state's law

5

when doing so would undermine a strong public policy of the state, and "the MWPCL represents strong Maryland public policy." *Cunningham v. Feinberg*, 441 Md. 310, 344 (2015). Accordingly, a choice of law provision cannot be given effect, if it would prevent a party from bringing a claim under the MWPCL. *See Medex v. McCabe*, 372 Md. 28, 39 (2002) (explaining that contractual language cannot eliminate a right of employees to be compensated for their work).

Here, the Offer Letter and SWAP require the application of Missouri law. (ECF Nos. 2-1 ¶ O; 2-2, at Art. 10.9). Missouri law allows a person to bring a statutory claim based on the laws of another state as if the person were proceeding in a court of that state, Mo. Ann. Stat. § 507.020, and the MWPCL is a statutorily based cause of action, *see Cunningham*, 441 Md. at 325. Thus, Missouri law allows Plaintiff to proceed with his MWPCL claim and does not conflict with the strong public policy expressed in the MWPCL. The parties' choice of Missouri law will be given full effect.[3]

Under Missouri law:

> The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent. *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 21 (Mo. 1995)(en banc). The

---

[3] There does not appear to be a material difference between Maryland and Missouri law on the contract principles applicable to the parties' dispute.

6

> terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning. *Id.*; *City of Harrisonville v. Pub. Water Supply Dist. No. 9 of Cass Cty.*, 49 S.W.3d 225, 231 (Mo.App. 2001). Additionally, each term of a contract is construed to avoid rendering other terms meaningless. *City of Harrisonville*, 49 S.W.3d at 231. A construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense. *Id.*

*Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. 2003) (en banc).

### B. Analysis

Although the documents require actions to be brought in a St. Louis court, Defendant has chosen not to enforce this part of the forum selection clause. (ECF No. 14-1, at 3 n.2). Defendant's motion to dismiss argues that the plain language of the Offer Letter requires arbitration. (ECF No. 14). Plaintiff asserts that SWAP is "a fully integrated agreement" distinct from the Offer Letter, his claims arise under SWAP, and, therefore, the Offer Letter's arbitration clause does not apply to this action. (ECF No. 22, at 7). In addition, Plaintiff argues that SWAP's forum selection clause conflicts with the Offer Letter's forum selection provision and because SWAP is the more specific agreement, SWAP's forum selection clause controls

7

and "effectively revoke[s] any other agreement between the parties to arbitrate a claim[.]" (*Id.*).

"[P]arties, although they intend to enter into a single bargain, will frequently set forth their respective promises, and the performances to be exchanged under those promises, in multiple writings." 15 Williston on Contracts § 44.28 (4th ed. 2017). To determine whether multiple documents constitute one contract or separate contracts, courts look to:

> "the intent of the parties . . . consider[ing] all of the facts and circumstances surrounding the making of the agreements, including: (1) the nature and purpose of the various agreements, including whether they are contained in one instrument or multiple instruments and whether, if the latter, they were executed at the same time or at different times, and whether the initially executed agreement contemplated the later agreements; (2) whether the same consideration was paid for each of the promises contained in the agreements or whether the consideration for the various agreements was separate and distinct; and (3) whether the parties' obligations under the various agreements are interrelated or independent."

*Id.* § 78.29.

In *Johnson ex rel. Johnson v. JF Enters., LLC*, 400 S.W.3d 763 (Mo. 2013) (en banc), the plaintiff signed multiple documents as part of the sale of a car including a sales agreement, an installment contract containing a merger clause, and an arbitration agreement. Plaintiff sued for negligent

misrepresentation in relation to the installment contract, and defendant moved to compel arbitration. The Supreme Court of Missouri cited to the "general rule that contemporaneously signed documents relating to one subject matter or transaction are construed together." *Id.* at 768. In such a case, "the intent of the parties is demonstrated by all the documents the parties signed contemporaneously. To protect the sanctity of the parties' written contract, all the provisions in the writings can and should be harmonized and given effect, including a valid arbitration agreement." *Id.* at 769. Considering the documents together, the court found the merger clause only pertained to prior agreements related to financing. Because the arbitration agreement was signed contemporaneously and did not relate to financing, a dispute over the installment contract was subject to the provisions of the arbitration agreement.

Here, Plaintiff never signed SWAP. He only signed the Offer Letter, and, thus, to the extent SWAP was "executed," it was executed when Plaintiff agreed to the Offer Letter. SWAP also does not have separate consideration from the Offer Letter; both SWAP and the Offer Letter are supported by the same exchange of employment for compensation. Moreover, unlike in *Johnson*, these documents reference each other. The Offer Letter explicitly identifies SWAP. SWAP refers back to the Offer

Letter stating that SWAP only outlines "a contractual right" and is "intended as a supplemental component of the overall employment agreement between [Defendant] and [Plaintiff]." (ECF No. 2-2, at Art. 10.5). In sum, SWAP and the Offer Letter are a single contract from a single transaction.

In this context, SWAP serves to detail a provision of the overall agreement between the parties, and its merger clause is limited and does not displace the Offer Letter's arbitration requirement. SWAP's merger clause says SWAP "shall constitute the entire Plan[.]" (ECF No. 2-2, at Art. 10.8). SWAP's merger clause does not say that it is the entire agreement between the parties. Thus, ordering arbitration does not contradict the merger clause because the merger clause only prevents adding additional or other terms to SWAP and does not prevent the enforcement of other contractual terms that are part of the overall employment relationship.

Moreover, although Plaintiff asserts SWAP's forum clause conflicts with the Offer Letter's arbitration clause, the clauses relate to two different acts and complement each other. SWAP mandates that a suit should be *filed* in a St. Louis court, but it does not mention how or who should resolve the suit. The Offer Letter does not identify where a suit should be filed, but it explains that a dispute or disagreement should be *resolved* by binding arbitration in St. Louis. When read in combination, any

10

suit relating to SWAP must be brought in a St. Louis court, but disputes are resolved through arbitration in St. Louis, and a judgment enforced through an action in St. Louis court. This reading gives effect to all terms while recognizing that "a court plays a role in arbitration proceedings by compelling the arbitration and enforcing any arbitration award." *UBS Fin. Servs., Inc v. Carilion Clinic*, 706 F.3d 319, 329 (4th Cir. 2013).

**IV. U-4**

Because the Offer Letter and SWAP must be construed together and require arbitration, Defendant's argument that the Form U-4 would also mandate arbitration does not need to be addressed.[4] Nevertheless, the result would be the same, for many of the same reasons already stated. In *Carilion Clinic*, the United States Court of Appeals for the Fourth Circuit considered a pair of analogous documents and concluded that, while an obligation to arbitrate under the FINRA Rule can be "superseded and displaced by a more specific agreement between the parties," the provision must be "sufficiently specific to impute to the contracting parties the reasonable expectation that they are superseding, displacing, or waiving the

---

[4] The defendant asserts that Maryland law applies to the Form U-4. As noted before, there does not seem to be a material difference between Maryland and Missouri law on the interpretation of contracts and, in any event, a Fourth Circuit decision supplies the dispositive rationale.

11

arbitration obligation created by" the FINRA Rule. 706 F.3d at 328. Language strikingly similar to that here was found not to preclude or waive arbitration. Moreover, in this case, the arbitration clause in the Offer Letter, the only document actually signed by Plaintiff, itself provides for arbitration, making it unmistakable that the parties did not intend the SWAP forum selection clause to preclude or waive arbitration.

**V.    Dismissal or Stay**

Defendant titled its motion as one to dismiss or to stay proceedings and compel arbitration. It, however, argues that dismissal is the appropriate result. (ECF No. 14). Plaintiff is silent on this point. "[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001). Moreover, although Defendant has stated that it will not seek to enforce the forum selection provisions, it is possible that arbitration will occur outside of Maryland. Dismissal is the appropriate remedy for improper venue. *In re Titanium Dioxide Antitrust Litigation*, 962 F.Supp.2d 840, 856-57 (D.Md. 2013). All of Plaintiff's claims must be resolved through arbitration, and Maryland is not necessarily the venue in which arbitration will occur. Accordingly, Plaintiff's action will be dismissed.

**VI. Oral Hearing**

Plaintiff requests a hearing pursuant to Local Rule 105.6 to address Defendant's citation to *UBS Fin. Servs., Inc v. Carilion Clinic*, 706 F.3d 319 (4th Cir. 2013). (ECF No. 24). District courts retain discretion to grant oral arguments. Fed.R.Civ.P. 78. Hearings are granted when oral advocacy would aid the court in its decision-making process. Local Rule 105.6. A hearing is not necessary to address a published authority of the Fourth Circuit. Accordingly, the motion for a hearing will be denied.

**VII. Conclusion**

For the foregoing reasons, the motion to dismiss filed by Defendant Stifel, Nicolaus & Co. will be granted, and the request for a hearing filed by Plaintiff Christopher Shebby will be denied. A separate order will follow.

                                             /s/
                            DEBORAH K. CHASANOW
                            United States District Judge